IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES E. WALKER,<br><br>  **Plaintiff,**<br><br>v.<br><br>KATHY MUSGRAVE, THOMAS STUCK, TONY KITTLE, WILLIAM LOY, LACIE LIVINGSTON, and KEVIN KINK,<br><br>  **Defendants.** | Case No. 19-cv-564-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

James E. Walker, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Sheridan Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983.

The case is now before the Court on a motion for summary judgment filed by Defendants Kathy Musgrave, Thomas Stuck, Tony Kittle, William Loy, Lacie Livingston, and Kevin Kink (Docs. 101, 102). Walker filed a response (Doc. 109) in opposition to the motion.

### FACTUAL BACKGROUND

Walker filed his Complaint (Doc. 1) on May 30, 2019, and two weeks later he filed an Amended Complaint (Doc. 8). He alleged that prison officials failed to respond to his grievances and denied him access to the law library and his legal documents (Docs. 8 and 9). On August 13, 2019, his Amended Complaint was dismissed for failure to state a claim

(Doc. 9). He was granted leave to file an amended complaint (Doc. 9, pp. 6-7), and on August 28, 2019, he filed his Second Amended Complaint (Doc. 11). He later submitted a Third Amended Complaint (Doc. 20). His Third Amended Complaint properly stated one claim of retaliation against William Loy for failing to return grievances (Count 2) (Doc. 19, p. 5).

Subsequently, Walker filed a motion for leave to file his Fourth Amended Complaint (Doc. 28). He was granted leave to amend his claim, a retaliation claim against Jane Doe #1, John Doe #1, Tony Kittle, and Loy for failing to return grievances. Walker also alleged that Kittle fabricated records to make it look like Walker's grievances were submitted out of time (Doc. 32). Walker was allowed to proceed on the following single, consolidated count:

> Count 1: Jane Doe #1, John Doe #1, Kittle, and Loy retaliated against Walker for filing grievances in violation of the First Amendment.

(Docs. 32, 33).

Walker later filed a Fifth Amended Complaint (Doc. 46) adding Kevin Kink and Lacie Livingston to his retaliation claim (Doc. 45). Kathy Musgrave was later identified as the Jane Doe Defendant (Doc. 63). Thomas Stuck was later identified as the John Doe Defendant (Docs. 72 and 79). Thus, the final claim allowed to proceed in this case was a single retaliation claim:

> Count 1: Kathy Musgrave, Thomas Stuck, Tony Kittle, William Loy, Lacie Livingston, and Kevin Kink retaliated against Walker for filing grievances in violation of the First Amendment.

Walker's claim stems from grievances he filed between January 2017 and

November 2018 while incarcerated at Lawrence Correctional Center. Specifically, Walker alleges that Defendants mishandled and/or failed to respond to a number of grievances during the relevant time period in retaliation for Walker filing grievances.

### A. January 2017 grievance

In January 2017, Walker submitted a grievance regarding the confiscation of the blades for his electric razor. He placed the grievance in the locked grievance box (Doc. 102-1, p. 31). Kathy Musgrave was his counselor when he first arrived at Lawrence (Doc. 102-1, p. 21). The grievance was never returned to him (*Id.*). Walker testified that he believes that his grievances were not returned out of retaliation for using the grievance process (*Id.* at p. 25). He believes this to be the case because there was no other reason for the grievances not to be returned (*Id.* at pp. 25, 27-28).

Walker arrived at Lawrence in December 2016, and he submitted a grievance in December about healthcare and another about his property in January 2017 (*Id.* at pp. 25-27, 30-31). The grievances were the first he had filed since arriving at Lawrence (*Id.* at p. 27). Walker acknowledged that Musgrave was not in the cellhouse during the time period at issue (*Id.* at pp. 28-29). He believed that the grievance was not returned because it was against an officer who confiscated his property (*Id.* at p. 30). He also acknowledged that other grievances about staff were returned to him (*Id.* at p. 29). Walker acknowledged that he did not have any evidence that Musgrave retaliated against him, only that she and other officers had keys to the box where he placed his grievance and she never returned his grievance (*Id.* at p. 32). She never spoke to him other than upon his arrival at Lawrence, and she never indicated that she did not like him or would not return his

grievances (*Id*. at p. 31).

The grievance at issue is not logged in the grievance logs or mentioned in Walker's cumulative counseling summary as being received in January (Docs. 102-2, 102-3). On March 6, 2017, Walker's assigned counselor Jeffrey Strubhart received three grievances directly from Walker that he claimed to have previously filed but never received a response (Doc. 102-2, p. 7). Included in the group of grievances was Walker's January 22, 2017, grievance regarding razors. This grievance was reviewed by his counselor on March 10, 2017 (*Id*.). On March 23, 2017, Strubhart responded to a grievance dated January 18, 2017, regarding missing property items (*Id*. at p. 6).

Musgrave testified in an affidavit that initially she was Walker's counselor, but in early January 2017, she began training for the position of programs counselor and did not receive or review grievances in January or thereafter (Doc. 102-6). She did not receive the grievances Walker submitted in January 2017 (*Id*.). Walker's counseling summary indicates he was seen by counselor Gamey Garrett on January 13, 2017. On February 17, 2017, Jeffrey Strubhart first saw Walker and returned grievances to him in March 2017 (*Id*. at pp. 6-7).

### B. May 2017 grievance

On May 2, 2017, Walker submitted a grievance (Doc. 102-1, p. 33). It was a grievance wrapped in white paper, taped, and with a money voucher (*Id*. at p. 36). Walker acknowledged that he did not place the grievance in the grievance box but in a request box that is then sorted to different departments. Requests can be sent to the law library, clinical services, or to healthcare (*Id*. at p. 36). Although the document was a grievance,

Walker submitted it to the law library to make copies (*Id*. at p. 37). It was a January 2017 grievance that he sought copies of before sending it to the Administrative Review Board ("ARB") (*Id*. at p. 39).

Walker believes that Stuck was the only one who had access to the box because he had a key (*Id*. at pp. 34, 37). He learned Stuck's name from the log sheets of who was working on the date he turned in his grievance (*Id*. at p. 35). Walker believes that Stuck had a key to the box and emptied its contents to be separated to the different departments where they were addressed (*Id*.). He does not recall talking to Stuck or interacting with him in any way (*Id*. at pp. 34-35). Walker later asked the law library and his counselor if they ever received the grievance, but he never heard anything about the grievance (*Id*. at p. 34).

### C. Grievances filed in August 2018

In August 2018, Walker placed four grievances in the locked grievance box in his cellhouse. Walker testified that William Loy only returned two of the four grievances (Doc. 102-1, pp. 23-24). He testified that he went with Loy to the grievance box and Loy retrieved the four grievances (*Id*. at pp. 23-24, 51). Loy told Walker he would respond to the grievances, but Walker maintains he only received back two of the grievances (*Id*. at pp. 23-24, 51). When he questioned Loy about the status of his grievances, Loy informed him that they had already been returned (*Id*. at p. 24). Walker recalled that one of the grievances was dated August 21, 2018 (*Id*. at p. 52). One of the grievances that was not responded to was about personal property, but he did not recall the nature of the second grievance (*Id*. at p. 53).

According to the cumulative counseling summary, Loy returned two grievances from August 2018 (Doc. 102-2, p. 4). On August 24, 2018, Loy answered and returned a grievance dated August 21, 2018, regarding commissary return policies (*Id.*). On September 20, 2018, Loy answered and returned an August 21, 2018 grievance regarding medical co-payments (*Id.*; Doc. 102-7, p. 1).[1] Walker's first August 21, 2018 grievance, which was returned to him, states that it is 1 of 4 grievances (*See* Doc. 109-2, p. 59). The second August 21, 2018 grievance is labeled as 4 of 4 (*Id.* at p. 61). Walker testified that he believed the grievances were not responded to because they dealt with property damage by other staff (Doc. 102-1, p. 56). He also testified that Loy was former Internal Affairs and believed that led to his failure to return the grievances, in order to protect fellow staff (*Id.* at p. 57).

Loy testified in his affidavit that it was his custom and practice as a counselor to remove all grievances from the box every weekday and respond to the grievances (Doc. 102-7, p. 1). He would respond to the grievance on the grievance form, enter the response into the cumulative counseling summary, and then return the grievance (*Id.*). Loy testified that he processed all grievances, did not select grievances to be responded to, and made no judgments on the merits of the grievances (*Id.* at pp. 1-2).

**D. June 17, 2018 Grievance**

On June 17, 2018, Walker submitted two grievances, one of which dealt with an

---

[1] Although the cumulative counseling summary indicates that the second grievance was dated August 30, 2019, Loy testified that was a typographical error. The actual date of the grievance was August 21, 2018 (Doc. 102-7, p. 1).

officer he had a lawsuit against (Doc. 102-1, p. 41). The grievances related to appeals of two disciplinary tickets (*Id*. at p. 42). Both grievances were received on July 20, 2018, but he did not receive responses for months (*Id*. at p. 42; Doc. 109-2, pp. 39-44). He sent a request asking about their status and received the grievances back in September 2018 (*Id*. at p. 42). But only one grievance had a response (*Id*.). He sent both grievances to the ARB where they were received on October 9, 2018, but the one without a response was sent back with a request for a counselor and warden response (*Id*. at p. 43; 109-2, p. 43). Walker then submitted the grievance to Kittle, but Kittle returned the grievance as submitted outside the proper time frame (*Id*. at p. 43, 109-2, p. 45).

The cumulative counseling summary indicates that Kittle returned the grievance on October 25, 2018 (Doc. 102-2, p. 4). Kittle's entry indicates that Walker sent the grievance to the ARB where it was returned needing a counselor response (*Id*.). Kittle noted the grievance was returned to Walker on July 20, 2018 and he "[didn't] know why it took him 3 months to send it to a counselor." (*Id*.).

Walker believes that Kittle fabricated the entry in the cumulative counseling summary (Doc. 102-1, p. 39). By Kittle indicating in the cumulative counseling summary that he did not understand why it took Walker so long to forward the grievance to the counselor, Walker believes that statement was made in retaliation (*Id*. at p. 40). Walker believes the statement made it seem like he never sent the grievance to the grievance office or that he sent it late (*Id*. at pp. 41-42, 44). But Walker testified that Loy sent the grievances to the grievance office when he first submitted them in June (*Id*. at p. 42). He acknowledged that Kittle responded to other grievances he submitted (*Id*. at p. 49).

Walker then forwarded the grievance to Livingston and Kink for review. Livingston was the grievance officer, and Kink the warden at Lawrence (Doc. 102-1, pp. 24, 61). Walker had no interaction with Livingston other than through the grievance process (*Id.* at p. 58). He testified that he sent Livingston a letter informing him that the ARB needed the grievance officer response, but Livingston deemed the grievance untimely (*Id.* at pp. 58-59). Walker testified that he believed Livingston was in a position to correct Kittle's mistake regarding timeliness but failed to do so (*Id.* at p. 59). He acknowledged that he did not have any evidence or records to indicate that the statement was fabricated (*Id.* at p. 60). Kink also signed off on the findings (*Id.* at p. 61).

## LEGAL STANDARDS

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014) (citing Fed. R. Civ. P. 56(a)). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enter., Inc.*, 753 F.3d 676, 681-82 (7th Cir. 2014).

In assessing a summary judgment motion, a district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by

examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014).

### B. Retaliation

Prison officials may not retaliate against an inmate for exercising his First Amendment rights, even if their actions would not independently violate the constitution. *See Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000), *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009). To prevail on a First Amendment retaliation claim, a plaintiff "must ultimately show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the [d]efendants' decision to take the retaliatory action." *Bridges*, 577 F.3d at 546 (quoting *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)).

At the summary judgment stage, the Seventh Circuit has held that the burden of proving causation is split between the parties. *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012). Initially, in order to establish a *prima facie* case, the plaintiff must produce evidence that his speech was at least a "motivating" factor in the defendant's decision to take retaliatory action. *Id.* Then, the burden shifts to the defendant "to rebut the causal inference raised by the plaintiff's evidence" and show that the harm would have occurred anyway, despite the protected activity. *Id.*

ANALYSIS

The parties do not dispute that writing grievances is protected by the First Amendment. Walker argues that Defendants either mishandled and/or failed to return his grievances to him in retaliation for Walker writing grievances.

Simply put, Walker fails to offer any evidence that Defendants mishandled his grievances in retaliation for Walker filing grievances. He offers only speculation and his belief that their actions were retaliation, but no evidence that his grievance filing was the motivating factor for Defendants' actions. *Turley v. Rednour*, 555 F. App'x 606, 609 (7th Cir. 2014) (citing *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008); *McCoy v. Harrison*, 341 F.3d 600, 604 (7th Cir. 2003)).

### A. Kathy Musgrave

Walker alleges that he submitted a grievance regarding missing property and Musgrave failed to return it out of retaliation. But there is simply no evidence that the Musgrave even participated in the grievance process when his grievance was filed. *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (In order to be liable under Section 1983, the defendant "must have caused or participated in a constitutional deprivation.") (quotations omitted). The grievance in question is dated January 18, 2017 (Doc. 109-2, p. 22-24). Musgrave testified that she began training for the programs counselor position in early January 2017 and was no longer a correctional counselor for Walker's housing unit. Her testimony is supported by the counseling summary which lists Jamey Garrett as Walker's counselor as of January 13, 2017 (Doc. 102-2, p. 7). In February and March 2017, Jeffrey Strubhart was Walker's counselor (*Id.*). There is no evidence in the record to

suggest that Musgrave was even Walker's counselor at the time that he allegedly submitted the grievances, and there is no evidence that she received the grievances and failed to return them.

Nor is there any evidence that the grievances were not returned out of retaliation. Although Walker testified that he believed the grievance was not returned because it was against staff, he eventually received a response to the grievance when it was resubmitted in March (*Id.*). Further, he testified that other grievances about staff were returned to him (Doc. 102-1, p. 29). There is no evidence in the record to suggest that the grievances were received and then not responded to in retaliation for Walker filing grievances against staff. Thus, Musgrave is entitled to summary judgment.

### B. Thomas Stuck

As to Thomas Stuck, Walker argues that he believes Stuck mishandled his grievance because on May 2, 2017, he placed the grievance in the request box to be sent to the law library for copies, and the law library never received the grievance. He testified that Stuck was the lieutenant on duty and he saw lieutenants sorting through the request slip box. Thus, Walker believes that Stuck was the last person who had access to the grievance and must have interfered with the grievance.

Even if Stuck was the last person to touch Walker's grievance, there is no evidence that he lost the grievance or that he purposefully removed the grievance. Nor is there any evidence that his actions were committed out of retaliation. Walker acknowledged in his deposition testimony that Stuck never interacted with him or talked to him during this time period (Doc. 102-1, pp. 34-35). Although he argues the simple fact it went missing

creates an inference that it was done in retaliation, there is simply no evidence in the record to suggest that Stuck did anything to the grievance—let alone that he was acting out of retaliation. Walker's mere speculation that it must have been retaliation is not enough. *See Turley*, 555 F. App'x at 609 (affirming summary judgment where plaintiff testified "that his belief that the defendants had engaged in retaliation rest[ed] entirely on the fact that he was not assigned a job," finding that the interference was not reasonable and based on speculation); *Springer*, 518 F.3d at 484 (speculation cannot create an issue of fact). Thus, Stuck is also entitled to summary judgment.

### C. William Loy

As to Defendant Loy, Walker testified that he submitted four grievances in August 2018, that he was present when Loy retrieved the grievances, and that he never received responses for two of the grievances. The two grievances which were returned were labeled 1 and 4 of 4 grievances submitted (Doc. 109-2, pp. 59 and 61). This evidence does suggest that there were two other grievances for which Walker did not receive a response.

But there is no evidence in the record that Loy's failure to return the other two grievances was done out of retaliation. Walker merely states that Loy failed to respond out of retaliation without offering any evidence. Walker suggests that the two missing grievances were not ruled on because they were about officers; he testified that one was about personal property, and he did not recall the topic of the other grievance (Doc. 102-1, pp. 52-53). But his two grievances which were returned also dealt with staff conduct, including the commissary's failure to refund a faulty extension cord and a nurse improperly charging him a co-pay (Doc. 109-2, pp. 59-62). Thus, his speculation that the

other two grievances were not returned because they were about staff is not supported by the evidence. Loy is, accordingly, entitled to summary judgment.

### D. Tony Kittle

As to Kittle, Walker takes issue with an October 25, 2018 statement in his cumulative counseling summary from Kittle. In deeming Walker's June 17, 2018 grievance untimely, Kittle indicated in the summary that "I don't know why it took [Walker] 3 months to send [the grievance] to a counselor." (Doc. 102-2, p. 4). Walker labels this statement retaliatory because he submitted the grievance earlier and it was returned unanswered. He believes that Kittle sought to coverup the fact that the grievance was not previously ruled on by the grievance office by making "it seem as if Plaintiff had held and submitted his own grievance untimely." (Doc. 109, p. 18).

Walker's June 17, 2018 grievances do indicate that they were received by the grievance office on July 20, 2018 (Doc. 109-2, pp. 39-44). There is no indication in the records that Kittle was involved in reviewing that grievance initially and he was not the grievance officer (*See* Doc. 102-2, p. 4). The evidence does indicate that Kittle was incorrect in stating that the ARB returned the grievance to Walker on July 20, 2018 and he waited three months to send it to the counselor (*Id.*). But there is no evidence to suggest that his statement or determination about the grievance was an act of retaliation. Walker testified that Kittle "tried to switch the blame" by fabricating when Walker sent the grievance (Doc. 102-1, pp. 43-44). But even if Kittle sought to coverup his own failings as Walker testified, that does not evidence retaliation. It is, at most, evidence that Kittle tried to cover up a prior mistake. There is no evidence to suggest that he acted out of retaliation for

grievances filed by Walker. Thus, Kittle is also entitled to summary judgment.

### E. Lacie Livingston and Kevin Kink

Walker fails to offer any evidence beyond his own speculation as to Livingston and Kink's response to his grievance. He testified that there were no records showing that Livingston or Kink knew how Kittle had previously responded to the grievance in the counseling summary (Doc. 102-1, p. 62, 64). Walker acknowledged that the only evidence he had was the denial of the grievance by Livingston and the concurrence by Kink (*Id.* at p. 63).

In his response, Walker argues that when he sent the grievance and a letter indicating that the ARB needed a response to review his grievance, they both agreed that the grievance was untimely. He argues that they both knew that by returning the grievance without a decision he would be denied the ability to exhaust the grievance. But there is simply no evidence in the record to support this position. All Walker offers is his speculation as to their motivations—which is not enough. See *Springer*, 518 F.3d at 484; *McCoy*, 341 F.3d at 604. He testified that he believed everyone was working together and it was "only common sense" that they knew Kittle fabricated the records and went along with it (Doc. 102-1, pp. 63-64). But he fails to offer any evidence, beyond his own belief, that either official acted out of retaliation. Nor does he indicate what action motivated the alleged retaliatory conduct. He merely states that Defendants "chose out of retaliation" to not properly process his grievance (Doc. 109, p. 11). At this stage, however, mere speculation and conclusory statements are not enough. Because Walker fails to offer any evidence to support his claims, Defendants Livingston and Kink are also entitled to

summary judgment.

## Conclusion

For the reasons stated above, the Court **GRANTS** the summary judgment motion filed by Defendants Kathy Musgrave, Thomas Stuck, Tony Kittle, William Loy, Lacie Livingston, and Kevin Kink (Docs. 101, 102). The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants and close the case.

**IT IS SO ORDERED.**

DATED:   August 19, 2022

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**